UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DEMETRIA GUIUAN,**<br><br>Plaintiff,<br><br>v.<br><br>**THERESA VILLAFLOR,** *et al.*,<br><br>Defendants. | Civil No. 7-6064<br><br>**OPINION** |

    This matter comes before the Court on Defendants' motion and Plaintiff's cross-motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons explained below, the Court **GRANTS** Defendants' motion in part and **DENIES** it in part, and **DENIES** Plaintiff's cross-motion in full.

I.    **Procedural and Factual History**

    Plaintiff Demetria Guiuan is a resident of New Jersey. Defendants Theresa and Mark Villaflor are residents of Virginia. Plaintiff alleges that on or about June 2003, the Defendants offered to sell Plaintiff a piece of real property including a parcel of land and a house built thereon located at No. 1 Symphony Street, Sta. Cecilia Village, Talon 2, Las Pinas City, Metro Manila, Philippines (the "Property"). Plaintiff further alleges that although Defendants purported to own the Property, Plaintiff understood that Defendant Theresa Villaflor's sister, Adelaide S. Sua, and her husband Reynaldo A. Sua, were legally registered as the owners of the Property.[1] Plaintiff alleges that she agreed to purchase the property for herself and for the use of her son Joel Guiuan Joson, his wife, Lualhati C. Joson, and their children. At this time, the Property was already subject to a mortgage issued by BPI Family Savings Bank, Inc. ("BPI"), a bank located in the Philippines.[2] Plaintiff alleges that she made the necessary payments and in September of 2007, she attempted to obtain the release of the title to the Property from BPI. However,

---

[1] The Suas were previously named as defendants in this suit. The Court dismissed the Suas for lack of personal jurisdiction. ECF No. 33.

[2] BPI was also formerly a defendant in this matter, and the Court also dismissed BPI for lack of personal jurisdiction. ECF Nos. 38, 39.

1

Plaintiff alleges that BPI, acting on the word of Adelaide Sua who was acting on directions from Defendants, informed her that BPI could not release the title and would no longer accept any mortgage payments from either Plaintiff or Mr. Joson. Plaintiff also claims that Defendants, acting in concert with the Suas, obtained a second mortgage on the Property unbeknownst to Plaintiff or Mr. Joson. Plaintiff further alleges that Defendants tricked her into paying down this second mortgage as well.

Not surprisingly, Defendants have a different story. Defendants admit that they received $36,500 from Plaintiff, but they claim they did so on behalf of the Suas, who were in the Philippines. Defendants claim that neither they nor Plaintiff were actually parties to the transaction, which was between Mr. Joson and the Suas. They further argue that Mr. Joson receiving title to the Property was contingent upon him paying off the entire mortgage balance, and that at any time prior to that, the Suas could revoke the transfer of ownership. Defendants claim that at some unspecified time, Plaintiff and Mr. Joson became unable to make the monthly mortgage payments and further claim that Plaintiff approached Defendants to ask for a loan. Defendants claim that they borrowed $36,000 from their relatives, Alexis and Alda-Elizabeth Wandagon, and entered into an agreement with Plaintiff to loan her the $36,000 to pay the mortgage on the Property (the "Loan Agreement"). Defendants claim that Plaintiff failed to pay the mortgage and approached them for further assistance. Subsequent attempts to make alternate arrangements failed.

A review of the uncontested documentary evidence reveals at least some of the pertinent details. On June 9, 2003, the Suas sent a letter to BPI advising BPI that the Suas were authorizing Mr. Joson to make mortgage payments on the Property and to "receive the RELEASE, DISCHARGE & CANCELLATION of the real estate mortgage, the transfer certificate of title No. T-82478 and all other pertinent documents relative to our loan file upon its full payment." On June 10, 2003, Defendants signed a document simply entitled "RECEIPT" that acknowledges that Defendants received the sum of $36,500 from Plaintiff and Mr. Joson (the "Receipt"). The Receipt states:

> In [sic] behalf of Spouses Adelaida S. Sua and Reynaldo A. Sua, we received the sum of THIRTY-SIX THOUSAND FIVE HUNDRED DOLLARS (US$36,500.00) U.S. Currencey [sic], in cash and 2 bank checks Nos. 220562371 and 220562372 from DEMETRIA GUIUAN/JOEL GUIUAN JOSON as full payment of the sale of our real property having post office address and situated at No. 1 Symphony St., Sta. Cecilia Village, Talon 2, Las Pinas City, Metro Manila, Philippines, which is partly described as follows: . . . [description of land] . . . The receipt of said amount was also acknowledged by Spouses Adelaida S. Sua and Reynaldo

  A. Sua by signing its Deed of Absolute Sale in the Philippines. Also on June 10th, Plaintiff drew two cashier's checks for $10,000 each, one made out to Defendant Theresa Villaflor and one made out to Defendant Mark Villaflor. On June 20, 2003, the Suas and the Josons signed a document entitled "DEED OF ABSOLUTE SALE WITH ASSIGNMENT OF MORTGAGE" (the "Deed"). Both Defendants signed the document in their capacity as witnesses. The Deed defines the buyer as Mr. Joson and the seller as Ms. Sua and states:

> THAT FOR AND IN CONSIDERATION of the amount of ONE MILLION EIGHT HUNDRED TWENTY-FIVE THOUSAND (P 1,825,000) PESOS, Philippine Currency, paid by the BUYER, and receipt of which is hereby acknowledged in her entire satisfaction by SELLER, the latter hereby CEDES, SELLS, AND CONVEYS unto BUYER, his heirs and assigns, the above-described house and lot, subject to the Deed of Mortgage (Mortgage Loan Agreement) hereinabove-mentioned;[3]

Also on June 20, 2003, the Suas and the Josons signed a document entitled "IRREVOCABLE GENERAL POWER OF ATTORNEY" (the "Power of Attorney Contract") that, among other things, empowers Mr. Joson to "administer, take charge and manage for my sole benefit, my real property located at No. 1 Symphony St." and goes on to describe the Property. The Power of Attorney Contract also empowers Mr. Joson to "exercise general control and supervision relative to the care and disposition of [the Property] . . . and for this purpose to make mortgage payments when due until the full payment [sic] of the entire remaining balance with BPI Family Savings Bank, Inc."

  Plaintiff sues Defendants for breach of the Deed and Power of Attorney Contract, fraud, negligent misrepresentation, and predatory lending. Defendants have counterclaimed for breach of the Loan Agreement.

## II. Legal Analysis[4]

---

[3] The Deed also indicates that the buyer agrees to pay the remaining balance of the mortgage – an amount that the document does not define – and indicates that the mortgage, in this case BPI, has consented to the assignment. But no representative of BPI appears to have signed the Deed.

[4] In the typical diversity case, the Court would need to conduct choice-of-law analysis prior to proceeding, but here the parties have waived their right to assert that law other than the law of New Jersey should apply to this action. Generally, parties may waive the conflicts of law issue where neither party raises it. *Neely v. Club Med Management Services, Inc.*, 63 F.3d 166, 180 (3d Cir. 1995); *Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1005 n.1 (3d Cir. 1980); *but see Huber v. Taylor*, 469 F.3d 67, 76 n.12 (3d Cir. 2006) (noting inconsistency of rulings by Third Circuit regarding whether choice-of-law issues are waiveable but declining to reach issue). That is especially true in cases, like this, where a party may advocate for the application of foreign law; Federal Rule of Civil Procedure 44.1 requires a party who intends to raise an issue about a foreign country's law to provide notice before doing so. Failure to provide such notice is grounds for waiver and empowers a court to apply the law of the forum. *See, e.g.*, *Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 440-41 (3d Cir. 1999).

### A. Rule 56 Standard

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.2d 641, 647 (3d Cir. 2007).

### B. Count One: Breaches of Contracts

Defendants argue that because Plaintiff is not a signatory or party to the Deed or the Power of Attorney Contract, she lacks standing to sue for breach of either. The Court will grant summary judgment for Defendants, but on slightly different grounds.

"To establish a breach of contract claim, a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result." *Murphy v. Implicito*, 920 A.2d 678, 689 (N.J. Super. A.D. 2007). "[O]ne who is not a party to a contract has no status to sue upon it if he be a person with whom the contracting parties never meant to come into contractual relations; a possible benefit to such a party by the performance of a contract is not enough to give him the right to maintain an action upon it. To have that effect it must appear that the contract was made for his benefit." *Crown Fabrics Corp. v. Assur. Co.*, 10 A.2d 750, 752-53 (N.J. 1940). "[T]he real test is whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts; and the fact that such a benefit exists, or that the third party is named, is merely evidence of this intention." *Borough of Brooklawn v. Brooklawn Housing Corp.*, 11 A.2d 83, 85 (N.J. 1940).

Plaintiff cannot dispute that her name does not appear on either contract she seeks to enforce, but she argues that she had standing as a third-party beneficiary. Plaintiff alleges, in essence, that she and Defendants entered into an illegal agreement for the sale of real property using their respective relatives as dummies in order to circumvent Philippine law relating to ownership of property by foreign persons. She argues that even though she does not appear as a signatory to either the Deed or the Power of Attorney Contract, she has standing to sue as a third-

4

party beneficiary because, in reality, she was the one who contracted for the Property and she is the one who made the necessary payments. The issue here is not just Plaintiff's lack of standing, as Defendants claim, but the fact that even accepting the facts as plead by Plaintiff, the Court must deny Plaintiff any relief on her contract claims as a matter of public policy.

New Jersey law has long recognized that illegal contracts are unenforceable. *Naimo v. La Fianza*, 369 A.2d 987, 990 (N.J. App. Div. 1976) (noting "[i]t is well established that illegal contracts are unenforceable" and "[a]ny contract made in consideration of an act forbidden by law or against public policy is unenforceable and the illegality of the contract will constitute a good defense at law as well as in equity"); *Marx v. Jaffe*, 222 A.2d 519, 521 (N.J. App. Div.) ("[T]he law will not assist either party to an illegal contract" but "will leave them where it finds them"), *cert. denied*, 224 A.2d 325 (N.J. 1966) (quotation omitted); *Paley v. Barton Sav. and Loan Ass'n*, 196 A.2d 682 (N.J. App. Div.), *cert. denied*, 41 198 A.2d 446 (N.J. 1964). Thus, to the extent that the parties executed both the Deed and the Power of Attorney Contract with the intent of circumventing foreign law, these agreements would be unenforceable. Because Plaintiff's entire theory of third-party standing rests on the Court or the jury finding that the parties made illegal contracts for their own benefit, she cannot succeed on her breach of contract claims. She either does not have standing, or, if she does have standing, the contracts are void and unenforceable.[5] The Court need not invalidate either contract, but the Court can and will grant summary judgment for Defendants on Count One because there is no way a reasonable juror can find for Plaintiff on her contract claims.

### C.  Counts Two & Three: Fraud and Negligent Misrepresentation

Both parties claim that they are entitled to summary judgment on Plaintiff's fraud and negligent misrepresentation claims based on the undisputed material facts. The Court disagrees and will deny both parties' motions for summary judgment on these counts.

To succeed on a claim for common law fraud, plaintiff must prove the following elements: (1) a material misrepresentation;[6] (2) knowledge or belief by

---

[5] Even if the contract were enforceable and Plaintiff had standing to sue to enforce them, the Court would likely have to dismiss the case pursuant to Federal Rule of Civil Procedure 19(b)(2). The Suas would be likely be necessary parties to any claim based on breach of the contracts to which they are party. Because the Court has already found that it lacks personal jurisdiction over the Suas, *see* ECF No. 33, their joinder would not be feasible, and the Court would likely be unable to continue with the case in their absence.

[6] Generally, the material misrepresentation must be about a "presently existing or past fact", but there is an exception for false representations of existing intentions. *Chrisomalis v. Chrisomalis*, 615 A.2d 266, 270 (N.J. Super. App. Div. 1992). Here, Plaintiff's allegations that Defendants made an agreement to tender title but had no intention of tendering the title would appear to fit this exception, *see id.*, although the proofs at trial may show

the defendant of its falsity; (3) an intention that the plaintiff will rely on it; (4) reasonable reliance thereon by the plaintiff; and (5) resulting damages. *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997). The proofs necessary for a claim of negligent misrepresentation are substantially the same, and the only pertinent variation is that a plaintiff need not prove scienter. *Kaufman v. i-Stat Corp.*, 754 A.2d 1188, 1195-96 (N.J. 2000).

Genuine issues of material fact prevent the Court from granting summary judgment for either party on Counts Three and Four. The basic thrust of Plaintiff's fraud claims are that Defendants induced her into giving them thousands of dollars by promising to give her title to the Property – a promise they never intended to keep. Among other proofs, Plaintiff has provided evidence of the fraud in the form of her certification and Mr. Joson's sworn affidavit, both of which establish facts showing the fraudulent scheme. Plaintiff has also produced evidence of her initial payment to Defendants, a fact which Defendants do not deny. Plaintiff also relies on the Receipt, which could be circumstantial evidence of the fraud in that it appears to show that Defendants – and not the Suas – owned the Property. Conversely, Defendants have provided their own certification which denies the misrepresentations, and have provided official records showing that the Suas actually possess title to the Property. The Deed and the Power of Attorney Contract both, on their face, also support Defendants' claim that they only received money from Plaintiff on behalf of the Suas and that the real transaction was between the Suas and Mr. Joson. On this record, a reasonable jury could find for either party.

### D. Count Four: Predatory Lending

The exact nature of Plaintiff's claims for predatory lending is unclear. The Complaint alleges that BPI conspired with the Suas and Defendants to prevent the conveyance of the title to Mr. Joson. In her brief in support of her motion for summary judgment, Plaintiff argues that Defendants are liable for predatory lending for conspiring with BPI to trick Mr. Joson and Plaintiff into paying for the second mortgage. Either way, her allegations are insufficient to state a claim.

At no point does Plaintiff attempt to define the legal basis for her claims. While both federal and New Jersey statutes create causes of action for conduct colloquially referred to as predatory lending, *see generally, e.g.*, *Coelho v. Alliance Mortg. Banking Corp.*, No. 06-2039, 2007 WL 1412289 (D.N.J. May 10, 2007) (analyzing various claims for predatory lending brought under various state and federal statutes), none of Plaintiff's pleadings or briefs identify any particular statutory basis for her claims. Even in light of Plaintiff's *pro se* status, the

---

otherwise, which could be grounds for a directed verdict or judgment as a matter of law prior to these claims going to the jury.

Complaint does not appear to plead a cause of action under any of these statutes, which is, of course, grounds for dismissal.[7] The Court will grant summary judgment for Defendants on Count Four.

### E.  Counterclaim: Breach of Contract

Defendants also move for summary judgment on their counterclaim against Plaintiff for breach of the Loan Agreement. Defendants claim that in October 2006, they loaned Plaintiff money so that she could pay Mr. Joson's mortgage obligations under the Deed. Defendants also claim that Mr. Joson was to pay the Suas rent on the Property for the period in which he was failing to make the necessary mortgage payments, and they further claim that they paid the rent due to the Suas as part of the Loan Agreement. The Court will deny both parties motions on this counterclaim.

Genuine issues of material fact prevent the Court from granting summary judgment for either party. Defendants have put forth evidence in the form of their own sworn statement and an unexecuted promissory note that support their claim. Plaintiff has put forth her own sworn statement and that of her son, Mr. Joson, in support of their argument that no such agreement existed. Because a reasonable jury could find for either party on this record,[8] the Court cannot grant summary judgment on this record.

## III.  Conclusion

For the foregoing reasons, the Court **DENIES** Defendants' motion for summary judgment **IN PART** and **GRANTS IT IN PART**, and grants summary judgment for Defendants on Counts One and Four. The Court also **DENIES** Plaintiff's cross-motion for summary judgment in full. The matter will proceed on Counts Two and Three and Defendants' counterclaim. An appropriate order follows.

    /s/ William J. Martini    
**WILLIAM J. MARTINI, U.S.D.J.**

---

[7] Plaintiff's failure to even attempt to identify a legal basis for her claim would also be a sufficient reason for the Court to grant summary judgment for Defendants on this Count. *See, e.g., Major Tours, Inc. v. Colorel*, 799 F. Supp. 2d 376, 408 (D.N.J. 2011).

[8] Because the alleged loan amount was less than $100,000, and the Defendants are not persons "engaged in the business of lending or arranging for the lending of money or extending credit", the New Jersey statute of frauds did not require that the Loan Agreement would be reduced to writing. See N.J.S.A. 25:1-5(f).